**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

JANE DOE, individually and on behalf of all others similarly situated,

Plaintiff,

v.

MERCY HEALTH and MERCY HOSPITALS EAST COMMUNITIES,

Defendants.

Case No. 4:26-cv-01721

**JURY TRIAL DEMANDED**

**FIRST AMENDED CLASS ACTION COMPLAINT**
*(Missouri Wiretap Act and Related State-Law Claims)*

COMES NOW Plaintiff, by and through her undersigned counsel, and files this First Amended Class Action Complaint, as a matter of course, pursuant to Rule 15 of the Federal Rules of Civil Procedure.

**INTRODUCTION AND NATURE OF THE ACTION**

1. This is a case about broken trust. When a patient opens her hospital's website or mobile application to schedule an appointment, review a laboratory result, refill a prescription, or quietly research a diagnosis that frightens her, she engages in one of the most private acts in modern life. She does so on a promise—made by her healthcare provider and guaranteed by law—that what she shares will be held in confidence and used only for her care.

2. Medical privacy is not a modern convenience or a bureaucratic formality. It is a principle as old as the practice of medicine itself. For more than two thousand years, from the Hippocratic Oath to today's state confidentiality laws, the healing professions have recognized a simple truth: patients will disclose their most intimate fears—about their bodies, their minds, and

their children—only if they trust that those disclosures will go no further. Confidentiality is not incidental to medical care; it is the very foundation of the relationship between a patient and those entrusted with her health.

3. Health information is uniquely sensitive. A single medical search can reveal a cancer diagnosis, a mental-health struggle, a pregnancy, an addiction, or a condition a person has told no one else. The pages a patient views and the providers she searches for are a diary of her fears and vulnerabilities. That is why the law surrounds such information with special protection—through the physician-patient privilege, Missouri health-privacy statutes, and through the Missouri Wiretap Act, which makes it unlawful to intercept and disclose the contents of a person's private communications without consent.

4. Defendants Mercy Health and Mercy Hospitals East Communities (collectively, “Mercy” or “Defendants”) betrayed that trust. Even as it assured patients that their information was private and secure, Mercy secretly embedded third-party tracking technologies—software developed by advertising and data-analytics companies including Google, Adobe, and others—into its website, www.mercy.net, its “MyMercy” mobile application, and its patient portal. These technologies operated invisibly. As patients searched for physicians, viewed their test results, managed their medications, and used Mercy's symptom checker, the tracking tools intercepted the contents of those communications in real time and transmitted them—together with persistent identifiers capable of unmasking the patient's identity—to third parties, who could exploit the data for advertising and profit.

5. Patients never knew. They did not consent. They received nothing in return except, for many, an unexplained increase in targeted advertising, spam, and solicitations. Mercy, by contrast, obtained the benefits of sophisticated marketing analytics built on the private medical

communications of the very patients who trusted it. This action seeks to hold Mercy accountable and to vindicate the privacy rights of Missouri citizens whose confidential health communications were intercepted and disclosed.

6. Plaintiff Jane Doe is a Missouri citizen and a Mercy patient who used Mercy's website, the MyMercy application, and its patient portal to obtain and communicate about her healthcare. Plaintiff brings this action on behalf of herself and a class of Missouri citizens whose private communications with Mercy's web properties were intercepted and disclosed to third parties without consent, in violation of the Missouri Wiretap Act, Mo. Rev. Stat. §§ 542.402 and 542.418, and Missouri common law.

7. Because this action concerns Plaintiff's own highly sensitive, protected health information, Plaintiff proceeds under the pseudonym "Jane Doe" to preserve the very privacy this lawsuit seeks to protect, and, prior to removal, was granted leave to proceed pseudonymously.

## PARTIES

8. Plaintiff Jane Doe is, and at all relevant times was, a citizen of the State of Missouri residing in the City of St. Louis. Plaintiff is a patient of Mercy and used Mercy's website, the MyMercy mobile application, and Mercy's patient portal to obtain and communicate about healthcare. Plaintiff's true identity is known to her counsel and, prior to removal, was disclosed by way of a sealed filing in the Circuit Court of the City of St. Louis, State of Missouri. Additional information, as appropriate, will be disclosed to Defendants subject to a protective order protecting Plaintiff's privacy.

9. Defendant Mercy Health is a Missouri corporation with its principal office at 14528 South Outer Forty Drive, Suite 100, Chesterfield, Missouri 63017. Mercy Health operates and provides healthcare services to Missouri residents through its website (www.mercy.net), the

MyMercy mobile application, and its online patient portal.

10. Defendant Mercy Hospitals East Communities is a Missouri corporation that operates Mercy's hospitals and healthcare facilities in the St. Louis area and provides healthcare services to Missouri residents, including through the web properties described herein. Defendants Mercy Health and Mercy Hospitals East Communities are collectively referred to herein as "Mercy" or "Defendants."

11. Defendants may be served through their registered agent, CSC-Lawyers Incorporating Service Company, 221 Bolivar Street, Jefferson City, Missouri 65101.

## JURISDICTION AND VENUE

12. This action was filed in the Circuit Court of the City of St. Louis and was removed to this Court by Defendants on October 14, 2026. Plaintiff contests federal subject-matter jurisdiction and has moved to remand. This action arises exclusively under Missouri law, and subject-matter jurisdiction lies in the Circuit Court of the City of St. Louis under Article V, § 14 of the Missouri Constitution.

13. This Court has personal jurisdiction over Defendants because each Defendant is a Missouri citizen with its principal place of business in Missouri, is registered to do and does substantial business in Missouri, and committed the acts and omissions alleged herein within Missouri.

14. Venue is proper in the Circuit Court of the City of St. Louis. In all actions in which there is any count alleging a tort and in which the plaintiff was first injured in the state of Missouri, venue lies where the plaintiff was first injured by the acts or conduct alleged in the action. Mo. Rev. Stat. § 508.010.4. Plaintiff was first injured in the City of St. Louis, where she resided and where she used Mercy's web properties when her communications were intercepted and disclosed.

15. This action is brought solely under Missouri statutory and common law. Plaintiff asserts no claim arising under federal law and expressly disclaims any and all federal causes of action, including any claim under the federal Wiretap Act, 18 U.S.C. § 2510 *et seq.* Plaintiff does not rely on the federal Wiretap Act as a source of any right, duty, element, or remedy pleaded in this Complaint. No federal question is presented.

16. The proposed Class is limited to citizens of the State of Missouri, and Plaintiff does not seek to represent any non-Missouri citizen. Greater than two-thirds of the members of the proposed Class in the aggregate are therefore citizens of the State in which this action was originally filed. Significant relief is sought from each Defendant, each Defendant's alleged conduct forms a significant basis for the claims asserted by the proposed Class, and each Defendant is a citizen of Missouri. The principal injuries resulting from the conduct alleged were incurred within Missouri. During the three-year period preceding the filing of this action, no other class action was filed asserting the same or similar factual allegations against any Defendant on behalf of the same or other persons. This action accordingly falls within the local controversy exception to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(4)(A). Because two-thirds or more of the members of the proposed Class in the aggregate, and the primary defendants, are citizens of the State in which this action was originally filed, it falls within the home-state exception as well, *id.* § 1332(d)(4)(B). Under either, a district court must decline to exercise jurisdiction.

## FACTUAL ALLEGATIONS

### A. Mercy Solicited Patients' Trust and Promised to Protect Their Private Health Information.

17. Mercy is one of the largest healthcare systems in Missouri. It encourages patients to use its digital tools—www.mercy.net, the MyMercy application, and its patient portal—to find physicians, schedule appointments, review test results, manage medications, message their care

teams, pay bills, and assess symptoms.

18. Mercy holds these tools out as private and secure and represents, expressly and impliedly, that patient information is protected and will be used only for legitimate healthcare purposes. Mercy is a covered entity subject to the confidentiality obligations of the Health Insurance Portability and Accountability Act ("HIPAA") and Missouri law, and patients reasonably understood and expected that their communications with Mercy's web properties would remain confidential.

19. Patients relied on these promises. They would not have used Mercy's web properties to disclose sensitive health information had they known that the contents of those communications would be intercepted and transmitted to third-party advertising and analytics companies.

**B. The Tracking Technologies and How They Work.**

20. So-called "tracking technologies" are snippets of third-party computer code—including pixels, tags, software development kits ("SDKs"), and session-replay scripts—that a website or application operator embeds in its own properties. When a patient uses the property, the code causes the patient's device to transmit information about the patient's activity, in real time, to the third party that created the code.

21. These technologies are provided by advertising and data-analytics companies for the purpose of collecting data about users. They routinely capture the specific pages and screens a user views, the buttons and links the user clicks, the search terms the user enters, and persistent identifiers—such as cookie identifiers, device identifiers, and account identifiers—that allow the third party to recognize the same user over time and across services and, frequently, to link the activity to a known individual.

22. The information captured by tracking technologies is transmitted contemporaneously with the user's communication—that is, at the very moment the user interacts with the property—and thus discloses the contents of the user's communication with the website or application as it occurs.

### C. Mercy Deployed Tracking Technologies That Intercepted and Disclosed Patients' Confidential Communications.

23. A pre-litigation technical investigation conducted at the direction of counsel confirmed that Mercy deployed multiple third-party tracking technologies within www.mercy.net, the MyMercy application, and Mercy's patient portal, and that those technologies intercepted the contents of patients' communications and transmitted them to third parties.

24. Among the tracking technologies identified are, on information and belief: Google Analytics 4 and Google Ads (products of Google LLC); Adobe Analytics, Adobe Audience Manager, Adobe Advertising Cloud, and Adobe's tag-management and personalization tools (products of Adobe Inc.); Salesforce Marketing Cloud Personalization (formerly Evergage/Interaction Studio); and session-replay and behavioral-analytics tools. Mercy configured certain of these tools to transmit data through Mercy-branded subdomains (for example, smetrics.mercy.net and metrics.mercy.net), disguising third-party data collection as first-party activity while the data was in fact routed to the third party.

25. The investigation confirmed that, as a patient used the MyMercy application and Mercy's web properties, these technologies transmitted to third parties both (a) persistent identifiers capable of identifying the patient, and (b) the contents of the patient's communications, including the identity of the specific health-related screens the patient viewed and the search queries the patient entered.

26. By way of example only, when a patient viewed her laboratory and test results,

managed her medication list, scheduled an appointment, used Mercy's symptom checker or self-triage tool, or searched for a physician, the tracking technologies transmitted to third parties a persistent identifier for the patient together with information identifying that specific activity—including, as to Google, a page-view event carrying a persistent client identifier and the address of the health screen the patient viewed (such as the test-results, medications, and symptom-checker pages), and, as to Adobe, the patient's provider-search query, page identifiers, geolocation, and a persistent marketing identifier.

27. These transmissions occurred without patients' knowledge or consent. Mercy did not obtain patients' consent to the interception or disclosure of their communications by these third parties, and no patient knowingly authorized these third parties to intercept the contents of his or her communications with Mercy.

28. Mercy knew or should have known that these technologies operated as alleged. Mercy chose to install them, configured them (including by cloaking third-party collection behind Mercy subdomains), and benefited from the marketing and analytics data they generated. On information and belief, Mercy did so to increase patient acquisition and revenue.

**D. Plaintiff's Experience.**

29. Plaintiff is, and during the Class Period was, a citizen of the State of Missouri and a patient of Mercy. Plaintiff used Mercy's website (www.mercy.net) and the MyMercy application and patient portal frequently during the Class Period to search for, schedule, and obtain healthcare and to communicate regarding her health.

30. Plaintiff reasonably believed and expected that her communications with Mercy's web properties were private and confidential. She did not know that Mercy had embedded third-party tracking technologies that intercepted the contents of those communications, and she did not

consent to their interception or disclosure. Had she known, she would not have used Mercy's web properties as she did.

31. As a direct and proximate result of Mercy's conduct, the contents of Plaintiff's private communications, together with identifiers capable of identifying her, were intercepted and disclosed to third parties, and Plaintiff suffered injury, including the loss of her privacy and of the value of her private information.

32. Plaintiff's experience is typical of the experience of the Class members, each of whom used Mercy's web properties and had the contents of their communications intercepted and disclosed in the same manner, without consent.

## CLASS ACTION ALLEGATIONS

33. Plaintiff brings this action under Missouri Rule of Civil Procedure 52.08 and, in the event this action is not remanded, Federal Rule of Civil Procedure 23, individually and on behalf of the following proposed Class: All citizens of the State of Missouri who, during the period beginning five years before the filing of the original Petition and continuing through the date of judgment (the "Class Period"), used Mercy's website (www.mercy.net), the MyMercy mobile application, or Mercy's online patient portal to search for, schedule, or obtain healthcare or to communicate regarding their or another's health, and whose communications or personally identifiable information were transmitted to a third party by means of the tracking technologies described herein.

34. Excluded from the Class are Defendants and their officers, directors, and employees; the judge presiding over this action and his or her staff and immediate family; and any person who timely and validly opts out. Plaintiff reserves the right to amend or refine the Class definition, including through subclasses, following discovery.

35. Numerosity. The Class comprises many thousands of Missouri citizens, making joinder impracticable. Mercy serves a large patient population across Missouri and encourages patients to use the web properties at issue. The precise number and identities of Class members are ascertainable from Defendants' and third parties' records.

36. Commonality. Questions of law and fact common to the Class predominate over any individual questions, including: whether Mercy deployed the tracking technologies; whether the contents of patients' communications were intercepted and disclosed to third parties; whether patients consented; whether Mercy's conduct violated the Missouri Wiretap Act; whether Mercy breached fiduciary, contractual, and common-law duties; whether Mercy was unjustly enriched; and the appropriate measure of relief.

37. Typicality. Plaintiff's claims are typical of the Class. Plaintiff, like every Class member, used Mercy's web properties and had the contents of her communications intercepted and disclosed by the same technologies, deployed by Mercy in the same manner, without consent.

38. Adequacy. Plaintiff will fairly and adequately protect the interests of the Class. Her interests are aligned with those of the Class, she has no conflicts, and she has retained counsel experienced in class-action and privacy litigation.

39. Predominance and Superiority. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The common questions predominate; individual Class members' interests in separately controlling litigation are minimal; and classwide treatment will conserve judicial resources and provide a remedy where individual litigation would be impracticable.

## <u>COUNT I</u>

**Violation of the Missouri Wiretap Act, Mo. Rev. Stat. §§ 542.418.2 & 542.402.1**

*(On Behalf of Plaintiff and the Class)*

40. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

41. The Missouri Wiretap Act makes it unlawful to knowingly intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept any wire communication, Mo. Rev. Stat. § 542.402.1(1); to knowingly disclose or endeavor to disclose to any other person the contents of any wire communication, knowing or having reason to know that the information was obtained through the interception of a wire communication in violation of that subsection, *id.* § 542.402.1(3); and to knowingly use or endeavor to use the contents of any wire communication, knowing or having reason to know that it was so obtained, *id.* § 542.402.1(4). Except as the Act specifically provides otherwise, such conduct is a class E felony. *Id.* § 542.402.1.

42. Patients' interactions with Mercy's website, mobile application, and patient portal—including the search terms they entered, the pages and screens they requested, and the information they submitted—are "wire communications" within the meaning of the Act. Mo. Rev. Stat. § 542.400(12) defines a "wire communication" as "any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception . . . ." Patients' communications with Mercy's web properties were transmitted, in whole or in part, by the aid of wire, cable, fiber-optic, or other like connection, and are therefore wire communications.

43. By deploying the tracking technologies, Mercy knowingly and intentionally intercepted, and procured third parties to intercept, the contents of those wire communications at the moment they were transmitted, and knowingly disclosed and used their contents. As used in

the Act, "contents," "when used with respect to any wire communication, includes any information concerning the identity of the parties, the substance, purport, or meaning of that communication." Mo. Rev. Stat. § 542.400(3). The information intercepted, disclosed, and used included the identity of the patient and the substance, purport, and meaning of each communication.

44. Neither Plaintiff nor Class members consented to the interception, disclosure, or use of their communications by Mercy or the third parties. The Missouri Wiretap Act provides that it is not unlawful "[f]or a person not acting under law to intercept a wire communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act." Mo. Rev. Stat. § 542.402.2(3). To the extent any consent is asserted, Mercy intercepted and disclosed the communications for the purpose of committing criminal and tortious acts, including the invasion of patients' privacy and the breach of the duties of confidentiality owed to them, and no purported one-party consent immunizes that conduct.

45. "[A]ny person whose wire communication is intercepted, disclosed, or used in violation of sections 542.400 to 542.422" has a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications. Mo. Rev. Stat. § 542.418.2(1). Plaintiff and each Class member is such a person, by reason of Mercy's violations of Mo. Rev. Stat. § 542.402.1(1), (3), and (4) pleaded above. Plaintiff and the Class are entitled to recover from each such person actual damages, but not less than liquidated damages computed at the rate of one hundred dollars a day for each day of violation or ten thousand dollars whichever is greater, *id.* § 542.418.2(2)(a); punitive damages on a showing of a willful or intentional violation, *id.* § 542.418.2(2)(b); and a reasonable attorney's fee and other

litigation costs reasonably incurred, *id.* § 542.418.2(2)(c).

**COUNT II**
**Invasion of Privacy — Intrusion Upon Seclusion**
*(On Behalf of Plaintiff and the Class)*

46. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

47. Plaintiff and Class members had a legitimate and reasonable expectation of privacy in the contents of their confidential health communications with Mercy's web properties.

48. Mercy intentionally intruded upon that seclusion by embedding tracking technologies that intercepted and disclosed those communications to third parties without consent.

49. This intrusion would be highly offensive to a reasonable person. The secret disclosure of a patient's medical searches, test-result views, medication activity, and symptom inquiries to advertising and analytics companies is an egregious breach of social and legal norms of privacy.

50. As a direct and proximate result, Plaintiff and the Class suffered injury, including loss of privacy, mental anguish, and the loss of the value of their private information, entitling them to actual and punitive damages.

**COUNT III**
**Breach of Fiduciary Duty of Confidentiality**
*(On Behalf of Plaintiff and the Class)*

51. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

52. As Plaintiff's and Class members' healthcare provider, Mercy stood in a fiduciary and confidential relationship with them and owed them a duty to maintain the confidentiality of their private health information and communications.

53. Mercy breached that duty by intercepting and disclosing the contents of patients' confidential communications to third parties for commercial purposes and without consent.

54. As a direct and proximate result, Plaintiff and the Class were injured and are entitled to actual and punitive damages and to disgorgement of the benefits Mercy obtained through its breach.

## COUNT IV
**Breach of Implied Contract**
*(On Behalf of Plaintiff and the Class)*

55. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

56. In exchange for patients' provision of their private information and their patronage, Mercy expressly and impliedly promised to keep patients' health information confidential and to use it only for legitimate healthcare purposes, and patients accepted and relied on those promises.

57. Mercy breached the implied contract by intercepting and disclosing patients' confidential communications to third parties without consent.

58. As a direct and proximate result, Plaintiff and the Class suffered damages, including the loss of the benefit of their bargain and of the value of their private information.

## COUNT V
**Unjust Enrichment**
*(On Behalf of Plaintiff and the Class)*

59. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

60. Mercy obtained a benefit from its interception and disclosure of patients' confidential communications, including valuable marketing and analytics data and increased revenue, at the expense of Plaintiff and the Class.

61. Mercy appreciated and retained that benefit under circumstances in which it would be inequitable to do so, because the benefit was derived from the private health communications of patients who neither knew of nor consented to the conduct.

62. Equity and good conscience require Mercy to disgorge and make restitution of the benefits it unjustly obtained.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully requests that the Court:

a. Certify this action as a class action, appoint Plaintiff as Class Representative, and appoint the undersigned as Class Counsel;

b. Enter judgment that Defendants' conduct violated the Missouri Wiretap Act and Missouri common law;

c. Award actual, statutory, liquidated, and punitive damages as provided by law, including under Mo. Rev. Stat. § 542.418.2(2);

d. Order restitution and disgorgement of the benefits Defendants unjustly obtained;

e. Enter injunctive and equitable relief requiring Defendants to cease the unlawful interception and disclosure of patients' communications and to remediate their web properties;

f. Award pre- and post-judgment interest, reasonable attorneys' fees, and the costs of suit; and

g. Grant such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, individually and on behalf of the Class, demands a trial by jury on all claims so triable. Respectfully submitted,

Respectfully submitted,

**NIEMEYER, GREBEL & KRUSE LLC**

By: */s/ Mark R. Niemeyer*
Mark R. Niemeyer #42437MO
Michael S. Kruse #57818MO
211 N. Broadway, Suite 2950
St. Louis, MO 63102
(P) 314-241-1919
(F) 314-665-3017
niemeyer@ngklawfirm.com
kruse@ngklawfirm.com

**TRAMMELL PC**

By: */s/ Fletcher V. Trammell*
Fletcher V. Trammell (*pro hac vice* forthcoming)
Texas Bar No. 24042053
3262 Westheimer Road, Suite 423
Houston, TX 77098
(P) 800-405-1740
(F) 800-532-0992
fletch@trammellpc.com

***Counsel for Plaintiff and the Proposed Class***

**CERTIFICATE OF SERVICE**

I certify that on this 19th day of October 2026, the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Mark R. Niemeyer*